**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Sturm, Ruger & Co., Inc.

    v.

Armscor Precision
International, Inc. et al.

Civil No. 14-cv-194-SM
Opinion No. 2016 DNH 141

## O R D E R

Sturm, Ruger & Co., Inc. ("Ruger") brought suit against
Armscor Precision International, Inc. ("API"), Rock Island
Armory Exports, Inc. ("RIA") (collectively "domestic
defendants"), and Arms Corporation of the Philippines ("ACP" or
"Filipino defendant") asserting claims arising out of the
defendants' alleged copying of a rifle manufactured by Ruger.
Ruger moves to compel the defendants to respond to certain
discovery requests.  Doc. no. 42.  The defendants object.  Doc.
no. 45.  For the reasons that follow, the court grants Ruger's
motion in part and denies in part.

## Standard of Review

"Parties may obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense and
proportional to the needs of the case . . . ."  Fed. R. Civ. P.
26(b)(1).  "Information within this scope of discovery need not
be admissible in evidence to be discoverable."  Id.  If a party
fails to respond to requests for production or interrogatories,

the party seeking discovery may move to compel production of the requested documents or answers to the interrogatories. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv).

The party seeking an order compelling discovery responses over an opponent's objection bears the initial burden of showing that the discovery requested is relevant. Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005). "This burden, however, should not be overstated. As the court of appeals has instructed, 'district courts are to interpret liberally the discovery provisions of the Federal Rules [of] Civil Procedure to encourage the free flow of information among litigants.'" West v. Bell Helicopter Textron, Inc., No. 10-cv-214-JL, 2011 WL 6371791, at *2 (D.N.H. Dec. 20, 2011) (quoting Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd., 333 F.3d 38, 41 (1st Cir. 2003)).

## Background[1]

Ruger is a manufacturer of firearms, which is incorporated in Delaware and has its main corporate office located in Connecticut. Am. Compl. ¶ 2. Ruger has a facility in Newport, New Hampshire, where it manufactures its signature rifle, the "10/22® carbine autoloading rifle (the '10/22')". Id. ¶¶ 2, 12.

---

[1]The factual background is drawn from Ruger's amended complaint and memoranda related to its motion to compel.

2

Ruger has sold and marketed its 10/22 rifle around the world.
Id. ¶¶ 12, 29.

The domestic defendants API and RIA are both located in Nevada. Id. ¶ 3-4. The Filipino defendant is a foreign corporation with its main office in the Philippines. Id. ¶ 5. In this case, Ruger alleges that the defendants have designed and manufactured a .22 caliber semi-automatic rifle (the "RIA 22") that impermissibly copies the 10/22. Id. ¶¶ 37-262. Ruger claims that the defendants have sold and marketed the RIA 22 around the world. Id. ¶¶ 263-345.

Based on the defendants' alleged conduct, Ruger brought this suit asserting claims for trade dress infringement, 15 U.S.C. § 1125(a), trade dress dilution, § 1125(c), contributory trade dress infringement § 1125(a), and violation of the New Hampshire Consumer Protection Act, RSA 358-A. Id. ¶¶ 346-70. Ruger alleges this court has jurisdiction over the case because the defendants' actions violate the Lanham Act, 15 U.S.C. § 1125. Id. ¶¶ 9, 348, 353, 367.

In early 2016, Ruger served the defendants with interrogatories and requests for the production of documents concerning, among other things, information regarding the sales, marketing, and advertising of the RIA 22. See Pl.'s Exs. A, D, E, F, G, H. The defendants objected to Ruger's requests, in part, contending that the requested information is irrelevant

3

and improperly seeks discovery of sales, marketing, and advertising information occurring outside the United States. Id.  The defendants stated in their discovery responses that they would only produce discovery "concerning marketing or advertising [or sales] in the United States that [is] not otherwise privileged or protected . . . ."  Pl.'s Ex. A at 3-4; Ex. D at 3-4; Ex. E at 3-4 (emphasis added).

The parties soon after met and conferred to address Ruger's discovery requests and the defendants' responses.  The parties were unable to reach an agreement, and Ruger filed its motion to compel.

## **Discussion**

A.  Discovery of the Defendants' Foreign Sales and Marketing Activities

Ruger contends the disputed discovery requests are "directly relevant to the claims and allegations raised in its complaint."  Doc. no. 42 at 8.  Specifically, Ruger alleges that the defendants sell and market the RIA 22 around the world; therefore, discovery concerning the defendants' sales and marketing of the RIA 22 is relevant to determining damages and establishing subject-matter jurisdiction under the Lanham Act. In response, the defendants argue that "information relat[ed] to [their] activities occurring outside the United States" is

4

irrelevant because it is beyond the scope of Ruger's Lanham Act claims.  Doc. no. 45-1 at 4.[2]

The "core purposes of the Lanham Act" are "to protect the ability of American consumers to avoid confusion and to help assure a trademark's owner that it will reap the financial and reputational rewards associated with having a desirable name or product."  McBee v. Delica Co., 417 F.3d 107, 121 (1st Cir. 2005) (citing Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 33–34).[3]  In enforcing the Act, "[t]he Supreme Court has . . . made it clear that the Lanham Act could sometimes be used to reach extraterritorial conduct . . . but it has never laid down a precise test for when such reach would be appropriate."  Id. at 117.

The First Circuit has held "that the Lanham Act grants subject matter jurisdiction over extraterritorial conduct by foreign defendants only where the conduct has a substantial

---

[2] At the motion hearing, the defendants stated that they did not intend to file a motion challenging whether Ruger's Lanham Act claims should be dismissed for lack of subject-matter jurisdiction.  Nevertheless, the defendants did note that the lack of jurisdiction was an affirmative defense.

[3] Under the Lanham Act, in addition to trademark infringement, a plaintiff may file a civil action for trade dress infringement. 15 U.S.C. § 1125(a)(3).  It follows that the Lanham Act works to assure a trade dress owner "reap the financial and reputational rewards associated with having a desirable name or product" just as it would for the owner of a trademark.  McBee, 417 F.3d at 121.

5

effect on United States commerce."  Id. at 120 (emphasis added).

In instances "when an American citizen is the defendant[,]" the

First Circuit points to Steele v. Bulova Watch Co., 344 U.S. 280

(1952), for guidance and notes that "[i]n such cases, the

domestic effect of the international activities may be of lesser

importance and a lesser showing of domestic effects may be all

that is needed."  McBee, 417 F.3d at 118.

### 1.   The Filipino Defendant

The defendants argue that Ruger's discovery requests for

the sales, marketing, and advertising activities of the RIA 22

by the Filipino defendant are irrelevant because "sales and

marketing activity occurring outside the United States has no

substantial effect on commerce in the United States."  Doc. no.

45-1 at 5-6.  This position, however, is contrary to the

substantial effects test in this circuit.

As stated previously, the First Circuit in McBee noted that

the "core purposes" of the Lanham Act were two-fold: to protect

American consumers and to assure the owner of a protected

product "reap the financial and reputational rewards associated

with having" that product.  417 F.3d at 121.  The defendants'

argument focuses on the former purpose and forgets the latter.

If the only purpose of the Lanham Act were to protect American

consumers from product confusion, then the defendants' argument

would be persuasive and the discovery of foreign activities by

6

foreign defendants would be irrelevant.  In this circuit, though, the substantial effects test may be satisfied by "a variety of harms . . . arising from wholly foreign activities by foreign defendants[,]" including "harm caused by false endorsements, passing off, or product disparagement, or confusion over sponsorship affecting American commerce and causing loss of American sales."  Id. at 119.  Therefore, although the Filipino defendant's conduct may be exclusively foreign, it is not necessarily immune from producing discovery in this case.

Here, Ruger has demonstrated that the sales, marketing, and advertising information it seeks from the Filipino defendant is relevant to its claims.  Ruger explained during the motion hearing that its 10/22 and the defendants' RIA 22 are sold in the same international markets, and Ruger believes that the international sales and marketing information of the RIA 22 is relevant to determining damages (due to loss of foreign sales) and whether product disparagement or confusion has occurred.  These articulated inquiries are relevant in establishing a Lanham Act claim.  See id.; Rodgers v. Wright, 544 F. Supp. 2d 302, 313 (S.D.N.Y. 2008) ("Financial harm to an American trademark owner whether from the loss of foreign sales or the damage to the trademark owner's reputation abroad is at the very

7

least, relevant to determining whether foreign infringement has a substantial effect on U.S. commerce.").

### 2. The Domestic Defendants

The defendants additionally argue that Ruger's discovery requests for the sales, marketing, and advertising activities of the RIA 22 by the domestic defendants are irrelevant because Ruger has failed to show how the sale of rifles internationally has had "a substantial effect on United States commerce." Doc. no. 45-1 at 6. In this circuit, however, the substantial effects test as it applies to foreign defendants does not apply to American-citizen defendants. McBee, 417 F.3d at 118-19. Indeed, to satisfy subject-matter jurisdiction against American-citizen defendants under the Lanham Act, "the domestic effect of the international activities may be of lesser importance and a lesser showing of domestic effects may be all that is needed." Id. at 118.

Here, Ruger has explained that, although the domestic defendants are based in Nevada, they have admitted to selling the RIA 22 internationally and "import[ing] the [RIA 22] to the United States and export[ing] the [RIA 22] to Canada." Doc. no. 42 at 10-11. Further, Ruger stated during the motion hearing that it believes an executive for the domestic defendants is directly affiliated with the Pilipino defendant, and the RIA 22 – although not sold domestically – has made its way between all

8

three defendants.  These allegations by Ruger are at least sufficient to show that the discovery of sales and marketing of the RIA 22 by the domestic defendants is relevant to its Lanham Act claims.  See Reebok Int'l Ltd. v. Sebelen, 930 F. Supp. 720, 723 (D.P.R. 1996) (finding "[w]here the defendants deal in counterfeit footwear between Asian and other countries, even though no counterfeit shoes are distributed in the United States, United States courts have jurisdiction over the defendants under the Lanham Act by reason of their United States banking activities and use of United States commerce.")

B.    Discovery of the Receiver or Barreled Action of the RIA 22

The defendants additionally object to the discovery of the "sales of the receiver or barreled action for the RIA 22."  Doc. no. 45-1 at 7.  In addition to the general objections noted above, the defendants argue that the discovery of these specific components of the RIA 22 is irrelevant because Ruger's trade dress claims are based on the "overall configuration and external appearance" of the 10/22 rifle.  Id.

"The party seeking information in discovery over an adversary's objection has the burden of showing its relevance." Caouette, 352 F. Supp. 2d at 136.  Here, Ruger did not respond to this objection in its briefs and spent little time discussing the issue during the motion hearing.  Therefore, the court denies this aspect of Ruger's motion to compel without prejudice

9

to the extent it seeks information specific to the receiver or barreled action of the RIA 22.  If the parties are unable to resolve this aspect of Ruger's discovery requests, Ruger may renew its motion to compel as to this issue, and the parties may submit additional briefs.

## Conclusion

For the foregoing reasons, Ruger's motion to compel, doc. no. 42, is granted in part.  Importantly, the court makes no determination as to whether Ruger has established a Lanham Act claim or subject-matter jurisdiction.  Those issues are for another day.  At this point, Ruger has simply articulated enough to satisfy that the majority of its contested discovery requests are relevant to its claims.

Nevertheless, under the recently revised Federal Rules of Civil Procedure, parties may only obtain discovery that is relevant to its claims and "proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  During the motion hearing, the parties represented that they would further confer as to the scope of Ruger's discovery requests if the court found the requests to be relevant.  Should additional discovery disputes arise, prior to filing a motion to compel, the parties may request an informal conference with the court.  To the extent the aforementioned informal process does not resolve the discovery dispute, the parties may thereafter seek to resolve

10

the dispute through a customary motion to compel discovery or other appropriate motion.

The parties' assented-to motion to extend deadlines is granted in part. Doc. no. 50. The disclosure of rebuttal experts and experts' written reports shall be extended to April 3, 2017. The deadline for witness and exhibits lists, pretrial statements, objections to pretrial statements, JERS statements, and the date of the pretrial conference will be set by the clerk's office. All other deadlines are extended as proposed by the parties. If the parties' proposed dates are no longer feasible in light of the court's order on the motion to compel, the parties may file an appropriate motion.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

August 17, 2016

cc: James F. Laboe, Esq.
    Dustun H. Holmes, Esq.
    R. Matthew Cairns, Esq.